NOT DESIGNATED FOR PUBLICATION

No. 123,599

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of N.E.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Opinion filed November 5, 2021. Appeal dismissed.

*Travis J. Ternes*, of Watkins Calcara, Chtd., of Great Bend, *Mitchell F. Engel*, pro hac vice, *Vanessa Dittman*, pro hac vice, and *Abilgail Lawson*, pro hac vice, of Shook, Hardy & Bacon, LLP, of Kansas City, Missouri, for appellant maternal grandmother.

*Jennifer L. Harper*, assistant district attorney, and *Thomas Stanton*, district attorney, for appellee.

Before MALONE, P.J., POWELL and CLINE, JJ.

PER CURIAM: This appeal arises out of proceedings initiated to terminate Mother and Father's parental rights over their daughter, N.E. The district court adjudicated N.E a child in need of care (CINC) and issued a dispositional order placing N.E. in the custody of the Kansas Department for Children and Families (DCF). N.E. was placed with Foster Parents, and St. Francis Ministries (St. Francis) provided services in the case. About six months later, N.E.'s maternal grandmother, I.E., requested placement and custody of N.E, but the district court denied that request after a hearing. The district court ultimately terminated the parental rights of N.E.'s parents and neither parent appealed. Later, the district court terminated jurisdiction over the case and Foster Parents adopted N.E.

1

I.E. now appeals, arguing (1) the district court disregarded Kansas' familial preference doctrine and the substantial consideration afforded to grandparents; (2) the district court improperly imposed extra-statutory restraints on DCF and St. Francis; (3) the district court relied on inadmissible hearsay in denying I.E.'s request for custody; and (4) the district court failed to engage in the proper best interests analysis. For the reasons we will explain in this opinion, we find that we lack jurisdiction over I.E.'s appeal.

FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2019, law enforcement took N.E., a four-month-old baby, into police protective custody after arresting both Mother and Father for aggravated battery. The next day, the State petitioned to have N.E. declared a CINC. Two days after she was taken into police protective custody, N.E. was placed with her foster family.

On September 3, 2019, the district court filed a journal entry and order placing N.E. in the temporary custody of DCF. The district court listed I.E. as an interested party, and she appeared at the hearing. According to a St. Francis social worker, I.E. stated after the hearing that she had some recent health issues and could not be a placement option for N.E. The temporary custody order stated that "no short term kinship placement shall be made without approval of the GAL [guardian ad litem]. Once a completed kinship assessment is done, it shall be forwarded to the court and a review hearing set before any placement in long term kinship is made."

On September 17, 2019, Father and Mother stipulated that N.E. was a CINC, and the district court issued an order adjudicating N.E. to be a CINC. Along with the adjudication hearing, the district court held a disposition hearing and ordered that N.E. remain placed in DCF custody.

2

In February 2020, St. Francis emailed the district court, stating that it was considering what the agency called a "non-relative kin placement" with C.E.—a friend of N.E.'s family. The proposed placement was supported by many of N.E.'s family members, including I.E., who emailed St. Francis asking to have N.E. placed with C.E. At the time of the proposed placement, N.E. had been with her foster family for five months and foster family opposed the move. The district court forwarded the email to all attorneys on the case asking for their comment and stating that the question was whether the move would be in N.E.'s best interests. The district court set the matter for a review hearing, but the district court postponed the hearing because of the COVID-19 pandemic. Ultimately, the proposed placement with C.E. was never completed.

On March 25, 2020, St. Francis worker Sonya Carlton emailed the judge stating that I.E. "has now stated she wants placement of [N.E.]" In a request for a kinship assessment, St. Francis explained that it had concerns about the proposed placement because I.E. originally stated she could not care for a baby because she was on disability and she could not keep up with a baby. The request also noted that only a month earlier, I.E. had wanted N.E. placed with C.E. It was only after the district court postponed the review hearing over placement with C.E. that I.E. requested placement of N.E.

Despite these concerns, DCF completed a placement assessment on I.E. The assessment reflected that St. Francis had not received all the requested background checks and that there were some issues with I.E.'s home based on the video walk through, such as the bathroom door not opening from both sides. The assessment gave "a preliminary recommendation for [N.E.] to be placed with [I.E.], pending in-person contact with [I.E.] at her home, a final walkthrough, fingerprint results, Kansas and New Mexico CANIS history results, and adult abuse and neglect history results."

On April 3, 2020, St. Francis emailed the district court I.E.'s kinship assessment packet and requested a hearing. In a follow up email, St. Francis clarified that it was not

making a recommendation on placement of N.E. with I.E. but was providing all the available information to the court.

On April 17, 2020, the district court stated it did not think the court would be open for an evidentiary review hearing because of COVID-19. St. Francis asked if the court could decide the issue without a hearing. The district court responded that it would like the other parties to weigh in and see if there was a consensus.

The State opposed moving N.E. from her current placement. The GAL also opposed moving N.E. from her current placement, pointing out that because of her age, the foster family was the only family she had known and that foster family was interested in adopting her.

On April 30, 2020, the district court emailed all parties explaining that it found placement with I.E. was not in N.E.'s best interests. The court found that moving N.E. from her foster family, the only family she has known, would cause N.E. trauma.

On May 22, 2020, I.E. filed a motion for interested party status and a request for change in custody. The motion cited K.S.A. 2020 Supp. 38-2286(a) for the proposition that a grandparent who requests placement and custody shall receive "substantial consideration" from the district court when evaluating the best interests of the child. I.E. asked the district court to grant a hearing to allow her to request a "change of custody of [N.E.] and permanent placement with her."

On June 4, 2020, the district court held a previously scheduled permanency hearing. A transcript of the hearing is not in the record, but Father apparently testified that he wanted N.E. to remain with her foster family. The district court also determined that reintegration was no longer viable. I.E. was represented by counsel at this hearing.

4

On June 11, 2020, the district court filed an order "to further memorialize findings made by the court and stated in an email on April 30, 2020." The order summarized the prior activity in the case including the proposed placement of N.E. with C.E. and I.E.'s later request for placement. The order noted that N.E. was bonded with her foster parents and pointed out that Father indicated he would like N.E. to stay with her foster family. The order explained that N.E. "does not know her bio family, her mother is incarcerated on serious charges and most likely her father will be as well." Finally, the order repeated the district court's earlier finding that "it was not in the best interest[s] for the minor child to be moved to [I.E.]'s home" and that N.E. should remain in foster care.

On June 17, 2020, the State moved for a finding of unfitness and termination of parental rights, and the district court held a hearing on the motion on August 20, 2020. I.E. appeared at the hearing with counsel. Again, a transcript from this hearing does not appear in the record. The district court found Mother unfit and terminated her parental rights. Father relinquished his rights. The order terminating parental rights, filed on August 28, 2020, granted custody of N.E. to DCF for adoption proceedings.

On October 9, 2020, the district court held a hearing to allow I.E. to present evidence on her request for placement and custody of N.E. The scheduling order referred to the hearing as an evidentiary permanency hearing. At the beginning of the hearing, the district court handed out a transcript of testimony from Dr. Richard L. Gaskill that stated children start bonding around four months of age and this supported the district court's earlier assertion that moving N.E. would cause her trauma. I.E. objected to Gaskill's testimony, but the district court replied that it was not an exhibit and she was just using it to better explain her thinking in the earlier exchange of emails. The district court then allowed I.E. to present her evidence, and several witnesses testified.

I.E. testified and acknowledged that she talked to a St. Francis caseworker early in the case. I.E. testified that she told the lady who helped her fill out the kinship forms that

she lived on disability because she had fibromyalgia. But I.E. denied telling the caseworker that she could not care for N.E. She testified about three visits she had with N.E. and explained that she did not have any trouble taking care of N.E. other than being worn out like most parents are after chasing a toddler.

Melinda Kline, the deputy director of permanency at DCF, testified that the preference is to place children with a relative or non-related kin rather than placing them in the foster system. She testified that she thought statutorily there was a presumption that placement with family was in the child's best interests.

N.E.'s foster father testified, stating he opposed moving N.E. He stated that I.E. did not show interest in having a relationship with N.E. until January 2020. Foster Father also testified to a letter he received from N.E.'s mother, expressing that she considered Foster Father and his wife to be N.E.'s parents. Foster Father stated that they were interested in adopting N.E.

C.E., the proposed non-relative kin placement, testified as well. C.E. stated that she attended one of I.E.'s visits with N.E., but she testified that she hung back and I.E. cared for N.E. the whole time and she only carried the diaper bag. C.E. also testified that I.E. had a standing job offer to work at her hotel because I.E. would need the income if she received custody of N.E. She stated that she could watch N.E. while I.E. worked.

Laurel Janssen, an intake specialist for St. Francis, testified that I.E. told her after the temporary custody hearing that she had some recent health issues after having a stroke and could not be a placement option for N.E. Stacy Crumble, a permanency specialist at St. Francis, testified that in September 2019, I.E. stated that she was on disability and that she would have trouble keeping up with a baby. But Crumble stated that on February 10, 2020, I.E. changed her mind and requested placement of N.E. Crumble observed the visits between I.E. and N.E., and she questioned I.E.'s ability to

keep up with N.E.'s activity level. Crumble concluded that moving N.E. would cause her trauma because she is bonded with her foster parents.

Juana Avicola, a kinship specialist, testified that she was working on I.E.'s assessment but it was still pending and there was no final recommendation at the time. Avicola testified that her preliminary recommendation, given in the March assessment, was now out of date and she would want to meet with I.E. again and update the information. Avicola also explained that her job is to complete the assessment and make a recommendation but then the case team, who knows the child, determines placement based on the best interests of the child.

The district court continued the permanency hearing to December 18, 2020. At that hearing, Foster Parents called Gaskill, who testified as an expert witness on the attachment process with young children and the consequences of broken attachment. After hearing this testimony, the district court took the matter under advisement.

On December 22, 2020, the district court filed the journal entry for the permanency hearing, finding it would not be in N.E.'s best interests to change placement. The district court also found that the State had not made adequate progress towards adoption. The district court removed N.E. from DCF custody and placed her in Foster Parents' custody for adoption.

On January 6, 2021, the district court issued a journal entry "regarding any findings the court has under advisement." The district court explained that at the permanency hearing it found that St. Francis was not making reasonable efforts toward permanency and thus it placed N.E. directly with the foster parents for adoption. The district court found that all other matters under advisement were rendered moot.

On January 8, 2021, the district court issued an order terminating jurisdiction over the CINC case because Foster Parents had adopted N.E. On January 13, 2021, I.E. filed her notice of appeal, challenging the January 6, 2021 decision and "all previous adverse rulings, disposition[al] orders, and orders."

The State moved to dismiss I.E.'s appeal for lack of jurisdiction, arguing I.E. was impermissibly trying to use Kansas Supreme Court Administrative Order 2020-PR-016 effective March 18, 2020, addressing time standards under the COVID-19 pandemic, to make an untimely appeal of orders issued by the district court in the CINC case. I.E. countered that the administrative order, issued on March 18, 2020, did not exempt cases under the Revised Kansas Code for Care of Children (Revised Code) from the suspension of deadlines and thus she could appeal all orders issued after the suspension of the deadlines. This court denied the motion to dismiss on present showing and ordered the parties to brief the issue.

DOES THIS COURT HAVE JURISDICTION OVER THIS APPEAL?

In this appeal, I.E. argues that (1) the district court disregarded Kansas' familial preference doctrine and the substantial consideration afforded to grandparents; (2) the district court improperly imposed extra-statutory restraints on DCF and St. Francis; (3) the district court relied on inadmissible hearsay in denying I.E.'s request for custody; and (4) the district court failed to engage in the proper best interests analysis. For her relief, I.E. asks us to "vacate the foster parents' adoption of [N.E.] and remand this case to the District Court with instructions that (1) the case be assigned to a different District Judge and (2) the District Court enter a disposition[al] order granting custody to DCF for placement of [N.E.]." But before we address the merits of I.E.'s claims, we must determine whether we have jurisdiction over this appeal.

In her brief, I.E. asserts that she is appealing the district court's "disposition[al] orders" entered June 11, 2020, August 28, 2020, December 22, 2020, and January 6, 2021. I.E. argues that while generally a notice of appeal must be filed within 30 days of the entry of judgment, because of the COVID-19 pandemic and the Kansas Supreme Court's administrative order suspending "'all statutes of limitations and statutory time standards or deadlines applying to the conduct or processing of judicial proceedings,'" she can appeal any order entered after March 18, 2020. The State first asserts the orders I.E. seeks to appeal are not appealable under the Revised Code. The State then challenges I.E.'s extension of deadlines argument and argues that her requested relief is moot.

The right to appeal is entirely statutory and Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re N.A.C.*, 299 Kan. 1100, 1106, 329 P.3d 458 (2014).

To resolve whether we have jurisdiction over this appeal, we must first address whether I.E. is trying to appeal any appealable orders under the Revised Code. If she is, then we must address whether the COVID-19 administrative order suspended the deadlines for I.E. to appeal some of the district court's orders.

*Are the identified orders appealable orders under the Revised Code?*

The Revised Code contains its own jurisdictional statute for appeals. K.S.A. 2020 Supp. 38-2273(a) limits the types of orders that can be appealed to "any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." If an order does not fit within these five categories, it is not appealable. *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 3. Our Supreme Court explained:  "The terms 'order of temporary custody,' 'adjudication,' and 'disposition' must be seen as terms of art, each

9

with a particular meaning within the Revised Code that clearly establishes a sequence of court-supervised events all marching toward permanency." 299 Kan. at 1116.

Temporary custody orders are orders issued under K.S.A. 2020 Supp. 38-2243. A temporary custody hearing must be held within 72 hours after a child is placed in protective custody, excluding Saturdays, Sundays, and legal holidays. K.S.A. 2020 Supp. 38-2243(b). Temporary custody orders are short-lived, lasting only until further adjudication but not exceeding 60 days. K.S.A. 2020 Supp. 38-2243(g)(2). Here, the district court issued the temporary custody order on September 3, 2019. It is uncontroverted the orders at issue are not temporary custody orders.

The next appealable order is an order of adjudication finding a child to be a CINC under K.S.A. 2020 Supp. 38-2251. An order of adjudication must be entered within 60 days of the filing of the petition. K.S.A. 2020 Supp. 38-2251(c). Here, the district court held the adjudication hearing on September 17, 2019, finding N.E. to be a CINC and keeping N.E. in DCF custody. I.E. did not appeal this order and no one asserts the orders at issue were orders of adjudication.

The next appealable order is an order of disposition under K.S.A. 2020 Supp. 38-2255. Under K.S.A. 2020 Supp. 38-2255(b) and (c), the court either places the child in the parent's custody or removes the child from parental custody for out-of-home placement. If the district court removes the child from the custody of a parent, there are several authorized dispositions under K.S.A. 2020 Supp. 38-2255(d). The district court may enter the order of disposition at the time of the adjudication or after, but it must be entered within 30 days of adjudication. K.S.A. 2020 Supp. 38-2253(b).

Once the district court enters a dispositional order, the court may rehear the matter on its own motion or on the motion of a party or interested party and may enter any dispositional order authorized under the Revised Code. K.S.A. 2020 Supp. 38-2256.

Here, the district court entered a dispositional order at the adjudication hearing on September 17, 2019. I.E. did not appeal the September 2019 order of disposition. But I.E. asserts that each of the four orders she identifies, and more broadly any decision denying her request for custody, are rehearing dispositional orders subject to appeal.

The final two appealable orders under the Revised Code are a finding of unfitness and the termination of parental rights under K.S.A. 2020 Supp. 38-2266; K.S.A. 2020 Supp. 38-2267; and K.S.A. 2020 Supp. 38-2269. If the district court terminates parental rights, then the court may authorize adoption, appoint a permanent custodian, or continue the case for permanency planning. K.S.A. 2020 Supp. 38-2269(g)(2). Our Supreme Court explained that "this dispositional phase ends once an order terminating parental rights is entered, precluding appellate review of any later orders because post-termination orders are not considered 'dispositional orders.'" *In re N.A.C.*, 299 Kan. at 1119. Here, the district court found Mother and Father unfit and terminated their parental rights on August 28, 2020. The record does not reflect that either parent appealed this order.

Before addressing whether any of the four orders identified by I.E. are appealable orders under the Revised Code, we will discuss *In re N.A.C.*, the seminal Kansas case on appellate jurisdiction under the Revised Code. N.A.C. was an infant who was taken into protective custody when she tested positive for cocaine at birth. The State filed a CINC petition, and the district court granted temporary custody of N.A.C. to Kansas Social and Rehabilitation Services (SRS). N.A.C. was placed with Foster Parents, who were not blood relatives. The district court held a disposition hearing in January 2012 and directed that N.A.C. remain in SRS custody. The district court terminated parental rights in May 2012 and continued N.A.C.'s custody with SRS for adoption.

SRS chose Maternal Cousins as an adoptive placement for N.A.C., but Foster Parents also wanted to adopt. When SRS denied Foster Parents' request for adoption, they moved for a permanency hearing under K.S.A. 2012 Supp. 38-2264. The district court

11

held a hearing on the motion on November 5, 2012. After hearing evidence, the district court found that SRS had failed to make reasonable efforts towards N.A.C.'s adoption, granted Foster Parents custody of N.A.C., and gave them permission to adopt. Foster Parents later adopted N.A.C. in a separate adoption case. Maternal Cousins appealed the district court's November 2012 ruling in the CINC case.

The Court of Appeals found that it had jurisdiction over the appeal, reasoning that the November 2012 order was a dispositional order subject to appeal because it changed custody of N.A.C. from SRS to Foster Parents. 299 Kan. at 1105. On review, the Kansas Supreme Court explained that the Revised Code contains its own jurisdiction statute that limits the types of orders that can be appealed and that each term is a term of art referring to a particular type of order within the Revised Code's sequence of events. 299 Kan. at 1115-16. The court analyzed each type of appealable order. In doing so, the court disagreed with the Court of Appeals' conclusion that the November 2012 order was a dispositional order simply because it changed custody to Foster Parents. 299 Kan. at 1118.

The court clarified that the dispositional phase of a CINC case ends upon termination of parental rights, precluding appellate review of any later orders. The court explained that "the reasonable efforts or progress finding and the collateral custody order and consent to adoption that followed once that finding was made are best characterized as permanency orders arising from a post-termination permanency hearing." 299 Kan. at 1118. Thus, the court held it had no jurisdiction to address the November 2012 order. 299 Kan. at 1120. The court recognized that its ruling results in a loss of appellate protection against potentially detrimental placements but found that the Legislature had balanced the needs of a child for permanency and chose not to include permanency orders in its list of appealable orders under the Revised Code. 299 Kan. at 1121-22.

*In re N.A.C.* is factually similar to I.E.'s appeal and many of the legal issues are the same. Under the guidance of our Supreme Court's ruling in the case, we will now address whether the four orders identified by I.E. are appealable orders under the Revised Code.

*Is the December 22, 2020 permanency order an appealable order?*

The district court's December 22, 2020, permanency order denying I.E.'s request for placement and change in custody is the primary order I.E. is trying to appeal. This order was entered after a two-day evidentiary hearing that occurred on October 9, 2020, and December 18, 2020. The State, I.E., the GAL, and Foster Parents all appeared at the hearing with counsel. The scheduling order referred to the hearing as an evidentiary permanency hearing. Eight witnesses testified and several exhibits were admitted into evidence. Significantly, the hearings took place and the district court's order was issued after the parental rights of N.E.'s parents were terminated on August 28, 2020.

I.E. argues that this order is an appealable "disposition[al] order" because the district court vacated its prior order of disposition placing N.E. in DCF custody and transferred custody to Foster Parents for adoption. I.E. concedes that permanency orders are not appealable but she asserts that she is appealing paragraph 10, which she calls "the disposition portion" of the order. In paragraph 10, the district court rescinded its previous order giving custody of N.E. to DCF and awarded custody to Foster Parents for adoption.

But as the State correctly points out, the December 22, 2020 order is a post-termination permanency order. Our Supreme Court in *In re N.A.C.* held that permanency orders after the termination of parental rights are not appealable under the Revised Code. 299 Kan. at 1118 ("We also agree the order terminating parental rights was the last appealable order under K.S.A. 2012 Supp. 38-2273[a]).").

13

I.E.'s argument that this court has jurisdiction because she is appealing the dispositional language in the order is unpersuasive. Our Supreme Court in *In re N.A.C.* addressed an interested party's appeal of the permanency order, identical to the order here, that consisted of (1) a factual determination that the State and its contractor had failed to make reasonable efforts or progress towards finding an adoptive placement for the child; (2) a rescission of the court's prior order giving the State custody of the child; and (3) an new order placing the child directly with Foster Parents with permission for them to adopt. 299 Kan. at 1109. After extensive analysis of the Revised Code, the court found that despite the change in custody, the order was not a dispositional order and it was not appealable because it was a post-termination permanency order. 299 Kan. at 1120.

*In re N.A.C.* is directly on point and precludes I.E.'s claim that the December 22, 2020 permanency order qualifies as a "disposition[al] order" subject to appeal. The December 22, 2020 order, which did the same things as the order appealed in *In re N.A.C.*, is not a dispositional order. Instead, the order is a post-termination permanency order that is not subject to appeal. 299 Kan. at 1119 ("[The] dispositional phase ends once an order terminating parental rights is entered, precluding appellate review of any later orders because post-termination orders are not considered 'dispositional orders.'").

*Is the January 6, 2021 order appealable?*

The January 6, 2021 order does not address any matter that the district court did not address in previous orders and, in fact, the record is unclear why the district court issued the order. The two-page journal entry summarized prior proceedings in the case including the actions taken at the post-termination permanency hearing. It then stated that the permanency hearing and the placement of N.E. directly with the foster parents for adoption rendered "all matters under advisement in this case moot." I.E. asserts that this sentence denied her motion and thus she can appeal it.

But this order is not appealable. First, the State correctly argues that the January 6, 2021 journal entry, a post-termination order, is not appealable for the same reasons as the December 22, 2020 permanency order is not appealable. Second, even if the January 6, 2021, order is considered the final order denying I.E.'s request for placement and custody of N.E., we will explain why such an order is not an appealable dispositional order when we address the district court's June 11, 2020 order.

*Is the August 28, 2020 termination of parental rights order appealable?*

I.E. argues that the August 28, 2020 termination of parental rights order is an appealable "disposition[al] order" because the district court granted custody of N.E. to DCF for adoption proceedings. I.E.'s entire argument in her brief on this point is that "the District Court's August 28, 2020 order is appealable. In this dispositional order, the district court granted custody of the child to DCF for permanency planning and the selection of an adoptive family, with the right to consent to an adoption." In her reply brief, I.E. adds that this order is appealable because "DCF's decision-making ability was subject to the District Court's standing orders disfavoring familial preference."

The State correctly counters that the August 28, 2020 order is not a dispositional order but a termination of parental rights order. The State argues that I.E. lacks standing to challenge the termination of parental rights. The State also argues that this order is moot because the relief I.E. is requesting—that N.E. be returned to DCF custody so that I.E. can be considered for adoption—cannot be granted at this stage of the proceedings.

An order terminating parental rights is an appealable order under the Revised Code. K.S.A. 2020 Supp. 38-2273(a). But we agree with the State that only the parents have standing to appeal that order. I.E. tries to get around this problem by focusing on the custody aspect of the order. Besides finding N.E.'s parents unfit and terminating their parental rights, the termination order granted custody of N.E. to DCF for adoption

15

proceedings as authorized by K.S.A. 2020 Supp. 38-2269(g)(2). Of course, N.E. had been in DCF custody since the case began, so this order did not result in a change of custody. In any event, this portion of the termination order does not qualify as an order of disposition as that term is defined at K.S.A. 2020 Supp. 38-2255. Likewise, this portion of the order did not result from a rehearing on the matter of disposition "on [the court's] own motion or on the motion of a party or interested party." See K.S.A. 2020 Supp. 38-2256. Thus, the August 28, 2020 termination of parental rights order is not an appealable dispositional order that gives I.E. standing to bring her claims to this court.

*Is the June 11, 2020 order appealable?*

The final order I.E. points to as being appealable is the June 11, 2020 order. I.E. asserts that in this order, the district court denied her request for placement and custody of N.E. But I.E. recognizes that this order was not the final order denying her request for placement and custody because the district later heard evidence and denied the request again in December 2020. In any event, I.E. identifies the June 11, 2020 order as a "disposition[al] order" subject to appeal under K.S.A. 2020 Supp. 38-2273(a).

As the State points out, the June 11, 2020 order was filed by the district court "to further memorialize findings made by the court and stated in an email on April 30, 2020." The order was a summary of the email exchanges between the parties leading to the district court's initial rejection of I.E.'s placement assessment. The order was not filed following any hearing conducted by the district court in which the court heard evidence or arguments of counsel. Because the June 11, 2020 order was filed to memorialize findings made by the district court in an April 30, 2020 email, the order cannot be considered a ruling on I.E.'s motion for change in custody filed on May 22, 2020. In fact, I.E.'s motion for change in custody was not initially set for hearing until June 16, 2020, and the hearing was continued several times until October 9, 2020.

16

But even if the June 11, 2020 order is viewed as an initial ruling on I.E.'s request for placement and custody, we disagree with I.E. that the order qualifies as a dispositional order under the Revised Code. As the State asserts, I.E.'s request for placement and custody can be likened to a motion for change of placement under K.S.A. 2020 Supp. 38-2258. This statute provides that if a child in DCF custody has been in the same placement for six months or longer, then DCF must give written notice to all interested parties of any plan to move the child to a different placement, and the court shall hold a hearing if any party timely objects to the transfer. K.S.A. 2020 Supp. 38-2258(a)-(c). This court has held that a party has no right to appeal a district court's decision made under K.S.A. 2020 Supp. 38-2258. *In re A.F.*, 38 Kan. App. 2d 742, 745-46, 172 P.3d 63 (2007).

I.E.'s motion for change in custody cited K.S.A. 2020 Supp. 38-2286 for the proposition that a grandparent who requests custody shall receive "substantial consideration" from the district court when evaluating the best interests of the child. The motion asked the district court to grant a hearing to allow I.E. to request a change of custody of N.E. and permanent placement with her. There is no reason for this court to find that an order denying custody of a child with a grandparent under K.S.A. 2020 Supp. 38-2286 qualifies as an "order of disposition" as that term is defined under K.S.A. 2020 Supp. 38-2255(a). As our Supreme Court made clear in *In re N.A.C.*, not every order in a CINC case involving the custody of a child qualifies as a dispositional order subject to appeal. 299 Kan. at 1118.

Finally, in the last sentence of the June 11, 2020 order the district court noted that DCF had failed to give the foster family notice of I.E.'s request for placement and custody of N.E. as it was obligated to do. This finding casts doubt on the validity of the order, rendering it unenforceable as a dispositional order and not subject to appeal.

In sum, none of the orders I.E. seeks to appeal qualifies as a "order of disposition" subject to appeal under the Revised Code. Appellate courts in Kansas have narrowly

17

construed the term "order of disposition" in K.S.A. 2020 Supp. 38-2273(a) and have consistently denied appeals like the one I.E. is trying to bring here. See e.g., *In re N.A.C.*, 299 Kan. at 1120; *In re A.F.*, 38 Kan. App. 2d at 746; *In re D.M.M.*, 38 Kan. App. 2d 394, 400, 166 P.3d 431 (2007). When the Legislature fails to modify a statute to avoid a standing judicial construction of the statute, courts presume the Legislature agrees with the judicial construction. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1052, 190 P.3d 245 (2008). Because the orders I.E. is trying to appeal are not appealable orders under the Revised Code, we must dismiss the appeal for lack of jurisdiction. We need not reach whether our Supreme Court's COVID-19 administrative order suspended the deadlines for I.E. to appeal. Finally, our Supreme Court has made it clear that when this court lacks jurisdiction over an appeal, we should refrain from making an alternative ruling on the merits of the case. See *In re Estate of Lentz*, 312 Kan. 490, 504, 476 P.3d 1151 (2020).

Appeal dismissed.